ROBERT R. POWELL, SBN 159747
**POWELL & ASSOCIATES**
925 W. Hedding Street
San Jose, CA 95126
T: (408) 553-0201 F: (408) 553-0203
E: rpowell@rrpassociates.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| MARISSA SANTA CRUZ, PAEA I'SUVA TUKUAFU, | Case No.: 5:20-cv-00351-NC |
| Plaintiffs, | FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES |
| v. | |
| CITY OF SAN JOSE; EUGENE THOMPSON; SAUL ZEPEDA; MICHAEL PINA; JOEL KRAMER; JOSEPH OLIVERI; JOSHUA SCHWITTERS; and DOES 1-10, inclusive, | JURY TRIAL DEMANDED |
| Defendants. | |

**NATURE OF THE ACTION**

1.     Officers with the City of San Jose Police Department responded to a noise complaint at the hotel room of Plaintiffs Marissa Santa Cruz, and Paea I'suva Tukuafu on May 18, 2019. The couple was celebrating Marissa's birthday. The officers acknowledged upon arrival the music the couple was playing was not that loud.  In fact, it had been turned down immediately upon a request by the hotel staff 30 minutes earlier.

1

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

2.    As the first two officers on scene were outside the hotel room, Officer Thompson said to his partner Zepeda, "We're going to run them out." And, that is exactly what the officers did, just as Thompson said they would before he had ever even spoken to Plaintiffs.

3.    After the Plaintiffs opened the door, and the officers repeatedly asked Paea to step outside, the officers then demanded Plaintiffs provide their driver's licenses / ID's, despite no lawful authority for doing so. Then, officers withheld the Plaintiffs' licenses, telling Plaintiffs they were holding the licenses "hostage," but when they would leave the hotel they would get their licenses back.

4.    Faced with such an ultimatum from fully armed police officers, Plaintiffs had no choice but to go into their room to pack their belongings to leave.

5.    However, once in the room and after the door had closed, the Defendants banged on the door insisting that the door must remain open - though it had already been closed twice during the encounter.

6.    Once the door was opened again in response to their banging on the door, the officers held the door open from the doorway while Plaintiffs continued to pack their belongings.

7.    Each of the officers was in full uniform – wearing sidearms, batons, pepper spray, and tasers – including three officers and a Sergeant who joined shortly after this initial response.

8.    One of the Defendant officers was equipped with a smokeless powder riot-gun which shoots what are referred to as "sponge rounds" – oversized, non-metal tipped projectiles. This riot-gun would shortly be used on the Plaintiffs.

9.    The Plaintiffs then basically failed the officers' "attitude test," and the Defendants proceeded to beat the Plaintiffs with batons, shoot them with sponge rounds, and hit them with their tasers multiple times.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

10.     The Plaintiffs' injuries were so serious they were transported by ambulance directly to the hospital for evaluation before being booked and spending one night in jail.  Criminal charges were not filed – at least not before filing of the Government Tort Claim Notice with the City of San Jose, which the City received on August 27, 2019.

11.     The officers then falsified police reports submitted in support of their effort to have the Plaintiffs convicted of Penal Code 148(b) Taking Officer's Weapon, Penal Code 243(b) Battery on a Police Officer, Penal Code 69 Resisting/Obstructing an "Executive Officer," and Penal Code 602 Trespassing.

12.     Defendants had no legal authority to, 1) demand the Plaintiffs' identification, 2) evict them from their hotel room, 3) hold Plaintiffs' driver's licenses "hostage" in order to force their eviction from their hotel room, 4) enter the couple's hotel room, or, 5) beat them mercilessly with batons, rubber bullets, and tasers.

13.     The City of San Jose and SJPD have a constitutionally deficient policy, practice, or custom and/or non-existent or inadequate training, 1) on the existence and/or respecting of 4th Amendment rights of hotel guests, 2) on what police officers can and cannot demand of citizens in terms of identification, 3) on the use of coercion to accomplish objectives in violation of constitutional rights, and, 4) on the use of force.

14.     These constitutionally violative policies, practices, customs, and non-existent or inadequate training processes lead to, and have led to, the injuries and violations of the Plaintiffs' rights complained of herein as described more fully below.

15.     The City has failed to properly train, supervise and discipline officers for such conduct, and as a result there is a culture within the police department of excessive use of force.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

16.   Plaintiffs Marissa Santa Cruz and Paea I'suva Tukuafu were victims of these policies, and it led to their bodies being battered and bruised; they now seek damages for these numerous violations of their constitutional rights.

## JURISDICTION

17.   The claims alleged herein arise pursuant to 42 U.S.C. § 1983, the 4th Amendment to the United States Constitution, and California Civil Code § 52.1 (Bane Act).

18.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343.

## VENUE

19.   Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because the unlawful acts, practices and omissions giving rise to the claims brought by Plaintiffs occurred in the City of San Jose, which is within this judicial district.

## PARTIES

20.   Plaintiff Paea I'suva Tukuafu (hereinafter referred to as "Paea") was at all times complained of herein a resident of San Jose, California.

21.   Plaintiff Marissa Santa Cruz (hereinafter referred to as "Marissa") was at all times complained of herein a resident of San Jose, California.

22.   Defendant CITY OF SAN JOSE (hereinafter referred to as "CITY") is and at all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the State of California.  Under its supervision, the CITY operates the San Jose Police Department ("SJPD").

23.   At all times mentioned herein, Defendant EUGENE THOMPSON (hereinafter referred to as "THOMPSON") was employed as a police officer for defendant CITY. THOMPSON is sued individually and as a police officer for the CITY.  By engaging in the conduct described

4

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

herein above, and below, THOMPSON acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, THOMPSON exceeded the authority vested in him as a police officer under the laws of the State of California, and the 1st, 4th, and 14th Amendments to the United States Constitution.

24.     At all times mentioned herein, Defendant SAUL ZEPEDA (hereinafter referred to as "ZEPEDA") was employed as a police officer for defendant CITY.  ZEPEDA is sued individually and as a police officer for the CITY.  By engaging in the conduct described herein above, and below, ZEPEDA acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, ZEPEDA exceeded the authority vested in him as a police officer under the laws of the State of California, and the 1st, 4th, and 14th Amendments to the United States Constitution.

25.     At all times mentioned herein, Defendant JOEL KRAMER (hereinafter referred to as "KRAMER") was employed as a police officer for defendant CITY.  KRAMER is sued individually and as a police officer for the CITY.  By engaging in the conduct described herein above, and below, KRAMER acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, KRAMER exceeded the authority vested in him as a police officer under the laws of the State of California, and the 1st, 4th, and 14th Amendments to the United States Constitution.

26.     At all times mentioned herein, Defendant JOSEPH OLIVERI (hereinafter referred to as "OLIVERI") was employed as a police officer for defendant CITY.  OLIVERI is sued individually and as a police officer for the CITY.  By engaging in the conduct described herein above, and below, OLIVERI acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here,

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

OLIVERI exceeded the authority vested in him as a police officer under the laws of the State of California, and the 1st, 4th, and 14th Amendments to the United States Constitution.

27.    At all times mentioned herein, Defendant MICHAEL PINA (hereinafter referred to as "PINA") was employed as a police officer for defendant CITY. PINA is sued individually and as a police officer for the CITY.  By engaging in the conduct described herein above, and below, PINA acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, PINA exceeded the authority vested in him as a police officer under the laws of the State of California, and the 1st, 4th, and 14th Amendments to the United States Constitution.

28.    At all times mentioned herein, Defendant JOSHUA SCHWITTERS (hereinafter referred to as "SCHWITTERS") was employed as a police officer for defendant CITY. SCHWITTERS is sued individually and as a police officer for the CITY.  By engaging in the conduct described herein above, and below, SCHWITTERS acted under the color of law and in the course and scope of his employment for Defendant CITY.  By engaging in the conduct described here, SCHWITTERS exceeded the authority vested in him as a police officer under the laws of the State of California, and the 1st, 4th, and 14th Amendments to the United States Constitution.

29.    The initial officers knocking at the door to Plaintiff's hotel room were two (2) in number, and those were THOMPSON and ZEPEDA. KRAMER, OLIVERI and SCHWITTERS arrived together approximately ten (10) minutes later. PINA arrived alone, approximately seven (7) minutes later.

30.    Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages set forth herein either on account of their own

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

individual actions, or their integral participation in the decisions and actions taken on those decisions that led to the violations of Plaintiffs rights set forth hereinbelow.

31.     Plaintiffs believe and allege that each and every of the named Defendants in this First Amended Complaint, exacted excessive force upon the Plaintiffs either by physical force, such as the grabbing and pulling to the ground of Marissa by PINA, or the use of batons striking Plaintiffs by THOMPSON, KRAMER and ZEPEDA, or by the use of Taser's shot into Plaintiffs' bodies by PINA, OLIVERI, THOMPSON and ZEPEDA, or by the use of "impact weapons" shooting projectiles at the Plaintiffs from close range by SCHWITTERS – a hotel hallway is where the entire incident essentially took place.

32.     At all times mentioned herein, Defendants DOES 1-10 were employed by defendant CITY.  Defendants DOES 1-10 are sued individually and as employees for the CITY.  By engaging in the conduct described below, Defendants DOES 1-20 acted under the color of law and in the course and scope of their employment for Defendant CITY.

33.     Each Defendant proximately caused injuries and damages to Plaintiffs because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy and/or excessive use of force.  Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission.

## FACTUAL ALLEGATIONS

**Plaintiffs Were In Their Hotel Room At The Holiday Inn on N. 1st St., San Jose**

34.     On May 18, 2019, Plaintiffs were staying at the Holiday Inn located at 1350 N. 1st St., San Jose, Ca.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

35.    The couple was celebrating Marissa's birthday that weekend before they were to leave on a family trip to Hawaii.

36.    Plaintiffs had paid all required fees for rental of the hotel room and were lawful occupants in said hotel room, with full expectations of privacy and dominion over their rented space.

37.    At approximately 8:45 p.m. on May 18th, the Plaintiffs were playing music in their room, and the music was apparently loud enough for someone to make a noise complaint because a representative of the hotel came to the hotel room door and knocked.

38.    Paea, who was far from fully clothed at the time, answered the door, but due to his state of undress only opened it enough to speak to the person knocking on the door; he estimates at most the door was open eight (8) inches.

39.    The hotel representative (Liz) then said words to the effect of, "Turn down the music or we're going to have to kick you guys out." Paea asked if the hotel would refund their fees if they were to be kicked out. Liz said no, so Paea told her, "Ok, then I'm going to turn down the music."

40.    Liz only came to the door this one time, and the Plaintiffs received no phone calls from her or any other hotel representative in addition to this one-time discussion at the door.

41.    After responding to Liz, Paea then closed the door and walked the very short distance to the device playing the music and immediately turned the music down.

42.    Approximately one-half hour later, ZEPEDA and THOMPSON came to the door of the hotel room and knocked on it. Before the Plaintiffs opened the door, THOMPSON can be heard telling ZEPEDA, "We're going to run them out."

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

43.   Marissa first viewed the two through the peephole in the door, then opened the door of the hotel room. Paea stepped more prominently in the door frame for the conversation with the officers that would then ensue.

44.   THOMPSON began explaining the "reason we're here," but Paea told him that he "knew," saying that they (the hotel) had asked them to turn down the music, and they did turn down the music.

45.   THOMPSON said, "Yeah we heard the music from – coming from out here but it wasn't exceedingly loud."

46.   Paea responded, "Yeah, because we turned it back down."

47.   THOMPSON then continued, "Yeah, so here's where we stand with this issue. Initially they wanted to kick you out. But now we talked to them and said hey, if they agreed to keep it down and there's no more noise complaints for the rest of the night, they agreed to let you stay."

48.   Paea said, "So when you guys walked over here the noise was good enough right?"

49.   Thompson replied, "We could hear it, but it wasn't – it wasn't crazy."

50.   Paea said, "That was just me pressing it one down so yeah that's the same thing that we are talking about."

51.   ZEPEDA then said, "Hey man can you do me a favor and just go ahead and step out you're not even in trouble, but I just want to talk to you out here." Paea agreed and exited the room and stepped into the hallway.

52.   ZEPEDA then asked Paea, "Do you have any ID on you?"

53.   Paea replied, "Why?"

54.   ZEPEDA replied, "That's what we do, we ID everybody."

9

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

55.   When Marissa interjected with, "What(?), no you don't," ZEPEDA responded, "Yeah, that's just what we do."

56.   Marissa pointed out they were already in the hotel, already gave the hotel their IDs, and they can just ask the hotel staff for their identification information.

57.   To that, THOMPSON interjected, "Ma'am, this can either go easily and you guys can stay for the rest of the night or we can go the other route because what they said is 'trespass you,' remove you from your room and I don't want to do that."

58.   Marissa pointed out, "We paid to be here."

59.   THOMPSON said, "I understand that but if you violate policy when you signed that agreement – violating the noise and getting noise complaints…"

60.   At this point Paea asked THOMPSON, "But when you guys walked over here was it really loud?"

61.   THOMPSON replied, "I'm not talking about now…," to which Paea responded, "So okay we solved the problem," and THOMPSON continued, "I'm talking about before."

62.   Paea said, "Obviously we're old and we've learned so when they said it was loud we turned it down, so that's it right?"

63.   Paea then stated, "So you guys don't need to check ID like this guy (gesturing in direction of ZEPDA)."

64.   ZEPEDA then told Paea, "Put your hand down."  Paea had merely gestured at the officer – nothing violent, fast, disrespectful, or menacing at all.

65.   After Paea pointed out how the officers had walked up and admitted to the Plaintiffs that the music was cool and reiterated that he and Marissa are grown-ups who turned the music down, he felt like that was all there was to the situation and it should be over.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

66. However, THOMPSON stated, "All we're saying is that if we come out here for a call and you are violating the policy of the hotel – they wanted to press charges for trespassing because they asked you to leave and you guys slammed the door in their face."

67. The comment about, "slam[ming] the door in their face," was so patently false that it made Marissa burst into laughter.

68. There was not one single point during the entire interaction with the Defendants during this initial conversation, or at any point thereafter, where either THOMPSON or ZEPEDA asked the Plaintiffs their version of events with regard to the hotel representative coming to the door.

69. There was a point – before the beating, tasing, and rubber bullet shooting yet to be described – where Paea did say that he did not slam the door "in their face," but simply responded, "Ok, we got it," when they came to the door and asked them to turn down the music.

70. THOMPSON continued, "All I'm saying is we need to see your IDs, okay? After we see your IDs . . .," but before he finished, Paea said again, "You can go on down to them and tell them what is my name and everything…" obviously referring to going down to the hotel front desk.

71. THOMPSON continued, "All I am asking for are your ID's."  He followed that by saying, "That's our job."

72. THOMPSON then tells the Plaintiffs, "And then as soon as I do that I'm going to let you guys go back in your room and resume your night as long as you continue to not have any noise complaints against you."

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

73.    Marissa declared to Paea "Let's just get your ID," and turned into the hotel room – she had been inside the threshold at the doorway, door open, the entire time the conversation was taking place in the hallway.

74.    Marissa had in fact been holding the hotel door as far open as it could go, thus the officers could readily see into the room. The Defendants could not have seen anything illegal or in the nature of a weapon in the hotel room, because there was nothing illegal or in the nature of a weapon in the Plaintiffs' room nor in their personal possession.

75.    Paea followed Marissa into the room and they closed the door and set about to locate their IDs so they can provide them to THOMPSON and ZEPEDA.

76.    Less than one (1) minute later, Paea exited the room and stepped back into the hallway, closing the door behind him, and handed his ID to THOMPSON.

77.    Marissa remained inside the room for a brief moment, found her ID, and then she opened the hotel door.

78.    By the time Marissa opened the door, the officers had already begun to run their personal information through dispatch – requesting any prior criminal record information, probation or parole status for the Plaintiffs.

79.    Both Plaintiffs come back "clean" of any prior criminal complaints, probation, or parole.

80.    While waiting for the dispatch response, Paea asked ZEPEDA if in fact Liz told the officers that the Plaintiffs had "slammed the door in her face."

81.    ZEPEDA replied that she had made that claim, and also said that they (Plaintiffs) had then put the "deadbolt" on the door.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

82.     Officers SCHWITTERS, OLIVERI, and KRAMER appeared from somewhere down the hallway, seemingly with a hotel employee, and walked a short distance to the area around the door of the Plaintiffs' hotel room.

83.     Mere seconds after arriving at the hotel room door, and upon witnessing that THOMPSON and ZEPEDA were already wearing theirs, KRAMER began putting on his latex gloves.

84.     Right about then, Paea politely asked for the IDs back from THOMPSON, who responded, "No."

85.     Paea, a bit puzzled by the response, said "Well you already got the stuff (information from the IDs)?"

86.     The next comment from THOMPSON was, "I need you to grab your stuff, and leave."

87.     Paea said, "Boss, you already said if I give you the ID you gonna be cool with everything."

88.     THOMPSON replied, "The agreement was that you would not violate the policies here and you slammed the door in our face."

89.     Paea stated, "You wanted the ID right …," but THOMPSON pointed in the direction of the man who had been seen emerging from behind the wall with KRAMER, THOMPSON and SCHWITTERS and said, "It doesn't matter, they said they want you out."

90.     Again, THOMPSON repeated his, "This can go two ways" speech.

91.     At this point, OLIVERI began putting on his latex gloves, followed shortly by SCHWITTERS doing the same.

92.     Paea once again asked for his ID back. SCHWITTERS said to Paea, "We're holding [your IDs] hostage until you leave."

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

93.     Though extremely upset, the Plaintiffs had no choice but under the circumstances of now being confronted with five (5) fully armed police officers, to refuse to leave, thus they went into the room to pack their bags and leave the hotel.

**Defendants Unlawfully Enter The Hotel Room Without Consent And Shortly Thereafter Begin Beating Plaintiffs With Batons, Striking Them With Tasers And Shooting Paea With Rubber Bullets (a.k.a "Sponge Round")**

94.     The couple turned and went into their room, closing the door behind them.

95.     Paea was consoling Marissa, who had started crying due to the way the police were treating them.

96.     Meanwhile, the officers were outside laughing, joking, and making quips about Paea charging at SCHWITTERS, although Paea had not been aggressive, hostile, menacing or threatening with the officers at any point.

97.     PINA arrived at the scene shortly thereafter and was briefed by THOMPSON.

98.     PINA instructed THOMPSON to get Plaintiffs to open the door.

99.     The door had been closed for approximately three minutes total, before THOMPSON again banged on the door saying, "San Jose Police! Open the door!"

100.    Paea was still consoling Marissa, and both were now at least 10 feet away from the hotel door. Paea went promptly to the door and opened it.

101.    Paea calmly explained to THOMPSON that their belongings were scattered around the room, and it would take them some time to pack everything up and that he would appreciate the time to do so.

102.    Paea closed the door as THOMPSON informed Paea that they wanted the door to remain open while they packed.

14

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

103.   PINA, who had walked over to Paea while the door had been open, asked THOMPSON if either Paea or Marissa were on parole or probation.

104.   THOMPSON confirmed that they had both in fact come back "clean."

105.   Marissa, who had grabbed the hotel room ice bucket in response to THOMPSON's request that the door stay open, came to the door and was beginning to attempt to place the ice bucket down near the door jam in a position where the door  could not close fully.

106.   By the time she was able to get to the door and prop it open, the door had been shut for approximately five (5) seconds.

107.   As soon as the door reopened, PINA kicked it with his foot, opening it all the way, and said, "We need the door to be all the way open."

108.   As he completed the kick of the door, his foot landed inside the hotel room, and he had now entered the hotel room.  He was flanked by at least two (2) of the five (5) (or more) officers that had been in the hallway and had his baton in his hand, clearly visible to Plaintiffs.

109.   Several of the other officers pulled their batons from their holsters at this point.

110.   THOMPSON then took PINA's place holding the door open, once again with his foot firmly planted in the hotel room.

111.   Marissa finished packing in less than two (2) minutes and stood talking in strong terms about the fact she was the daughter of a law enforcement officer and had a few different relatives who were also law enforcement officers.

112.   While Marissa was doing that, Paea was continuing to pack the couple's items in a large duffle bag and look around the room for any items that may have fallen under the bed, or behind anything in the room.

113.   While packing, Paea received and answered a call to his cell phone.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

114.   At this same time, possibly in response to the audacity as PINA saw it of Paea answering his phone when he and his officers had told them to vacate the premises, PINA turned to ask SCHWITTERS if he has a "sandbag," to which SCHWITTERS responds he only had a 40mm projectile in his patrol vehicle.

115.   PINA instructed SCHWITTERS to collect the 40mm projectile impact weapon.

116.   These projectile impact weapons have the potential to cause serious injury and death, and are restricted by SJPD Duty Manual to be used only "to incapacitate a suspect armed with a weapon likely to cause serious bodily injury of death" and "in situations where its use is likely to prevent any person from being seriously injured."

117.   While SCHWITTERS ran off to retrieve the weapon, PINA stepped away from the area immediately in front of the hotel room door and took off a large outer jacket he was wearing and placed it on the floor.

118.   PINA then put on blue latex gloves on each hand, which is a protocol in SJPD for use when there is a likely physical altercation with a "suspect" about to occur.

119.   Once SCHWITTERS returned from his vehicle with the impact weapon, PINA moved with purpose towards the hotel room door once again.

120.   Though the officers were not appearing to listen to anything Marissa said, they instead began asking things of Paea.  The person speaking was recognized by Plaintiffs based on the patches/bars on his sleeve to have been a Sergeant; it was PINA.

121.   PINA, ready to rumble with his gloves on and his impact weapon now present and ready, started forcefully saying to the Plaintiffs from the doorway, words to the effect of, "We're being very patient, okay. If you guys both want to go to jail we can arrange that okay?"

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

122.   When Marissa asked, "For what[,]" PINA replied, "For resisting and delaying our investigation."

123.   Obviously their "investigation" had ended when THOMPSON and ZEPEDA had ordered them to gather their things and vacate the hotel.

124.   PINA then said, "So stop arguing, start packing, and let's go."

125.   Paea heard the questioning from PINA directed to him, he moved two steps to get to a place where he could see the officer face to face and repeated that he was not arguing, he was packing, just like they told them to do.

126.   Paea, who was literally in the last minute or less of completing the packing of their items in a large duffle bag, said, "I'm packing like you fucking said," and, "Shut the fuck up and let me pack! Damn!"  He returned to packing and had in fact put a final item in his large duffle bag and zipped the bag, even picking it up with one hand as the following melee commenced at the same moment nearby.

127.   In apparent anger at Paea's comments directed to PINA, PINA told another of the Defendants – believed to be ZEPEDA or THOMPSON, to, "Push up and tase this guy." PINA then backed away from the doorway to allow THOMPSON to step into the door with his Taser drawn.

128.   Officers ZEPEDA and THOMPSON began to move into the room.

129.   Marissa had been sitting but upon hearing these words about tasering Paea she stood up and quickly moved in a line between THOMPSON who was pulling his taser and pointing it at Paea; she attempted to knock the Taser alignment away from the target of her boyfriend.

130.   THOMPSON fired his taser into Marissa while ZEPEDA stood directly behind him. ZEPEDA himself then fired his taser into Marissa. At the same time as being struck by the

17

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

tasers, PINA reach into the doorway and grabbed Marissa by her left arm and pulled her violently into the hallway and onto the ground face first.

131.   Paea then attempted to move into the hallway after seeing Marissa being yanked out of the hotel room by PINA.

132.   Paea grabbed the now packed and zipped duffle bag and held it up to cover his face and emerged from the doorway to move toward Marissa to throw his body over hers and protect her from the assault.

133.   As soon as Paea appeared in the doorway with his duffle bag, SCHWITTERS shot him with a 40 mm less lethal impact weapon, causing him to drop the bag and instinctively turn his body away from where the projectile was being fired.

134.   Paea nonetheless then continued to try and shield Marissa from the officers' assault, and while he reached down toward Marissa's legs while she laid on the ground, KRAMER stepped toward Paea and struck him in arm with his police baton with all his strength. At that same time, OLIVERI fired his taser into Paea. KRAMER immediately attempted to strike Paea with his baton again – using both hands to wield the weapon – only to stumble over Paea's dropped duffle bag and miss his target.

135.   KRAMER delivered these blows despite the fact Paea had already been hit with the impact weapon projectile and had at least one taser in his body delivering voltage that left him immobilized, causing him to fall on top of Marissa and then to the ground.

136.   Immediately after Paea collapsed to the floor, Marissa got up off the ground and moved toward OLIVERI whom had already deployed his taser against Paea. OLIVERI then shoved Marissa away from him and toward KRAMER as KRAMER was standing over Paea with

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

baton in hands, poised to strike Paea again. PINA then fired his taser into Paea while he was on the ground.

137.   Marissa grabbed KRAMER's baton, and then THOMPSON stepped toward Marissa and with all his strength began striking her with his baton – striking Marissa's lower body/legs between 5 and 7 times. After the first two vicious blows, Marissa instinctively turned her back to THOMPSON in order to absorb the strikes from his baton on the softer back-part of her legs. ZEPEDA would eventually move in and strike Marissa with his baton as well at least once while Marissa was merely standing between THOMPSON and KRAMER passively absorbing the impacts to her legs. The force of the blows was strong enough to later leave deep subcutaneous bruising on the back of Marissa's legs.

138.   After striking Marissa with his baton once, ZEPEDA moved toward Paea and struck him while he was laying face down and offering no resistance to the Defendant officers.

139.   This was all taking place at the exact moments where Marissa was being struck by THOMPSON.

140.   Finally – after the tasings and beatings but before being pulled to the ground by the officers – SCHWITTERS shot Marissa in the buttocks with his 40 mm less lethal impact weapon from a range no farther than four (4) feet.

141.   In less than thirty seconds – from the time of PINA's unlawful order to THOMPSON and ZEPEDA to tase Paea, to the time both Plaintiffs were secured on the ground while the officers cuffed them – Paea was shot with a less-lethal impact weapon by SCHWITTERS, tased by OLIVERI and PINA, and was struck brutally and wantonly with police batons by KRAMER and ZEPEDA. Within that same small window of time, Marissa was tackled by

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

PINA, tased by THOMPSON and ZEPEDA, struck several times with police batons by THOMPSON and ZEPEDA, and shot with a less-lethal impact weapon by SCHWITTERS.

142.   All named Defendants were engaged in the violent use of excessive force against Plaintiffs within that 30 second timeframe, which resulted in the multiple injuries detailed below.

143.   The Taser strikes hit Paea in all the following locations, 1) two in his thighs, 2) three that ascended up the abdominal area, 3) one in the center of his chest, and, 4) one that was in his right collarbone (and may have been the one he believed he had blocked with the duffle bag).

144.   The multiple voltage pulses caused Paea to collapse to the ground, and one of the officers immediately mounted Paea's back with his knee.

145.   Paea, once he had recovered enough to speak, began immediately pleading with the officer to remove his knee from his back, even expressly offering he place his knee on the back of Paea's neck.

146.   Paea was loudly telling the officer he had a recent injury, and the Defendant's knee was inflaming the left side of his rib cage where he had suffered a rib fracture approximately three (3) weeks earlier.

147.   Paea was fully compliant with the officers while on the ground, where he remained until the ambulance crew arrived with a gurney.

148.   While attempting to slightly roll Marissa and pull her right arm behind her back, Marissa's dress had come up exposing her bare buttocks for more than one minute.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

149.  Humiliated, Marissa pleaded desperately with Defendants several times to please move her dress down to cover her buttocks. She explicitly repeated over the course of a minute that her buttocks was exposed and if they could pull her dress down for her or let her do it herself.

150.  Paea made the same request as well.

151.  The officers instead let her remain in that condition with her bare buttocks exposed for a few minutes while they attempted to place Marissa in hand cuffs.

152.  The Plaintiffs remained face down on the ground, handcuffed, for approximately twenty (20) minutes.

153.  ZEPEDA held his knee on Paea's back the entirety of that twenty minutes, moving to his right side approximately ten (10) minutes after he first informed the officers of his injury.

154.  KRAMER, OLIVERI, and THOMPSON were all applying pressure to various points on Marissa's body for the duration of the time she was held on the floor. SCHWITTERS at various times moved between assisting in cuffing Paea and Marissa.

155.  They got up when ambulance personnel arrived with gurneys.

156.  So significant were their injuries, the Plaintiffs were transported directly to Santa Clara Valley Medical Center.

157.  Plaintiffs then spent one night in jail and were released, and no criminal charges were filed, though Plaintiffs are concerned about retaliation in the form of filing such charges due to having already served a Government Tort Claim Notice (on 8/28/19 initially, followed by an "amended" on 9/9/19).

158.  CITY, by virtue of its policies, practices and customs, and/or issues related to non-existent or inadequate training, which Plaintiffs contend were one or all a moving force behind the conduct in violation of their rights by the individual Defendants, is a Defendant to

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

each of the alleged violations below (*Monell* liability) based on constitutional amendments, but the CITY is not repeated in headers or body of the Claims for Relief, and instead the subject of a separate Claim for Relief, wherein the facts related to said policies, practices and customs, and/or issues related to non-existent or inadequate training are addressed fully.

## DAMAGES

159.   As a proximate result of Defendants' conduct, Plaintiffs suffered severe pain and emotional distress, as indicated by immediate and persistent anxiety, fear, sleep disturbance, loss of a sense of security, reduced dignity and pride, sleep disturbance, and both fear and resentment of law enforcement personnel accompanied by a serious loss of trust in police officers.

160.   As a proximate result of Defendants' conduct, Plaintiffs suffered severe physical pain at the time of the use of the tasers, batons, and rubber bullets, and the use of those items on Plaintiffs left them with lingering deep tissue bruises, cuts, and significant abrasions to their skin, leaving discoloration to their skin that will never subside.

161.   The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive.  Plaintiffs are therefore entitled to award of punitive damages against the Defendants, except the government entity CITY.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### 4th Amendment – Unlawful Entry, 42 U.S.C § 1983
### (Plaintiffs v. Thompson, Zepeda & Pina)

162.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

163.  In doing the acts complained of herein, Defendants THOMPSON, ZEPEDA and PINA acted under the color of the law to violate Plaintiffs Paea and Marissa's basic human dignity and right to be free from unreasonable entry/search of their rented hotel room under the 4th Amendment to the United States Constitution.

164.  Defendants acted under color of law in entering the Plaintiffs' hotel room without a warrant, probable cause, consent, or exigency of any kind that would excuse obtaining a warrant before intruding upon Plaintiffs' zone of privacy.

165.  The unlawful and unreasonable entry into the Plaintiffs hotel room and demands to keep the door of their hotel room open, violated both the Plaintiffs 4th Amendment rights against unreasonable entry/search, and the Plaintiffs 1st Amendment rights of privacy.

166.  As a proximate result of defendants' malicious conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

167.  The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

## SECOND CLAIM FOR RELIEF
### 4th Amendment – Excessive Use of Force, 42 U.S.C § 1983
### (Plaintiffs v. Thompson, Zepeda, Pina, Schwitters, Oliveri, Kramer)

168.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

169.  In doing the acts complained of herein, Defendants THOMPSON, ZEPEDA, PINA, SCHWITTERS, OLIVERI and KRAMER acted under the color of the law to violate Plaintiffs Paea and Marissa's basic human dignity and right to be free from the use of excessive force under the 4th Amendment to the United States Constitution.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

170.   Defendants acted under color of law in entering the Plaintiffs' hotel room to subject them to excessive force described hereinabove, thereby violating the Plaintiffs' constitutionally protected rights.

171.   As a proximate result of defendants' malicious and sadistic conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

172.   The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

### THIRD CLAIM FOR RELIEF
### 4th & 14th Amendment – Seizure of Person / Property / Due Process, 42 U.S.C § 1983
### (Plaintiffs v. Thompson, Zepeda, Schwitters, Pina, Oliveri, Kramer)

173.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

174.   In doing the acts complained of herein regarding the taking and holding of the Plaintiffs personal state issued identification (driver's licenses) to extract compliance with unlawful directives to vacate their hotel room, Defendants THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI, and KRAMER acted under the color of the law to violate Plaintiff Paea and Marissa's basic human dignity and right to be free from the use of coercive unlawful tactics to accomplish the violation of the Plaintiffs' rights to remain in their rented dwelling, thus violating the 14th Amendment to the United States Constitution.

175.   The taking of the Plaintiffs' state issued identification was likewise a seizure of their property without due process of law.

176.   Defendants acted under color of law in taking the Plaintiffs' state-issued ID's and holding them "hostage," to force the Plaintiffs to decide on the ultimatum given by

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

THOMPSON, all occurring in the presence of all of the other SJPD officers present who made no effort to intercede and are liable as integral participants in the violations of the Plaintiffs rights, and/or liable for their failure to intercede in acts they knew were unlawful and in violation of the Plaintiffs' constitutional rights.

177.   As a proximate result of defendants' conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

178.   The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

### FOURTH CLAIM FOR RELIEF
### 5th & 14th Amendment – Demand Identification, 42 U.S.C § 1983
### (Plaintiffs v. Thompson & Zepeda)

179.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

180.   In doing the acts complained of herein, specifically the demand of Plaintiffs to provide Defendants THOMPSON and ZEPEDA with their state issued driver's licenses under the circumstances set forth above, which request as delivered by THOMPSON constituted an implied threat pursuant to the "this can go two ways" statements by THOMPSON that the Plaintiffs were going to be physically removed from the premises if they did not accede to THOMPSON and ZEPEDA's demands to provide their driver licenses, constituted yet another 14th Amendment violation by the use of such coercive tactics, and did separately but concomitantly constitute a violation of Plaintiffs' 5th Amendment rights.

181.   The freedom of individuals such as Plaintiffs to oppose or challenge police actions such as demanding identification without any articulable suspicion of criminality afoot without

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

thereby risking arrest or seizure is a fundamental right enumerated in the 5th Amendment to the Unites States Constitution.

182. At all times mentioned herein, Plaintiffs were not required to bear witness to or against themselves, or otherwise identify themselves to the government actors / police officers in any manner, and such decisions and conduct is protected activity under the 5th Amendment to the United States Constitution.

183. By obtaining such information, and such violation of the Plaintiffs' rights, the named Defendants did yet again violate the Plaintiffs' 14th Amendment rights to due process.

184. As a proximate result of Defendant THOMPSON and ZEPEDA's conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

185. The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

**FIFTH CLAIM FOR RELIEF**
***Monell* Liability for All Constitutional Violations**
**(Plaintiffs v. CITY)**

186. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

187. Plaintiffs allege that each and every of the violations of the U.S. Constitution and the Amendments thereto set forth above, occurred based on the policies, practices, customs of CITY addressed above and hereinbelow, and/or due to the non-existent or inadequate training of CITY police officers addressed above and hereinbelow, such that any or all of these long standing policy/custom and/or training related issues were the moving force behind the violations of the Plaintiffs rights as alleged herein.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

**Culture of Excessive Force**

188.   The CITY, by and through its supervisory officials and employees, citizen complaints, civil litigation filings, and Internal Police Auditor communications and reports, has been given notice on repeated occasions prior to the excessive force used on Plaintiffs, of a pattern of ongoing constitutional violations and practices by the individually-named Defendants herein and other police officers employed with SJPD, including having received notice regarding the use of excessive force, resulting in injuries and deaths multiple times within the City of San Jose caused by SJPD officers.

189.   These policies and practices have been and continue to be implemented by Defendants, such as the excessive use of force suffered by Plaintiffs at the hands of THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI and KRAMER, and they are the moving force behind the violations of the Plaintiffs 4th Amendment rights against the unlawful entry into their hotel room, and use of excessive force, and the violations of their rights against unlawful search and seizure as described hereinabove.

190.   Plaintiffs further allege that the CITY has either no training whatsoever, or inadequate training, on the constitutional boundaries of the use of force by law enforcement officers, the use of alternative strategies such as de-escalation vs. confrontation, and potential consequences of serious life altering injuries or death to victims of their excessive force.

191.   The CITY has either provided no training at all in regard to appropriate handling, treatment, and protection of unarmed suspects, or has provided wholly inadequate training with no measurable standards, no measuring or discernment of the training recipients understanding, retention, and application – or non-application – of training materials and subject matter.

27

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

192.   Plaintiffs allege the non-existent or inadequate training aforesaid was the moving force behind the violations of the Plaintiffs' 4th Amendment rights against the use of excessive force as described hereinabove, and that the consequences of such non-existent or inadequate training – that persons would be subjected to unlawful search, seizure of their person and/or property, and excessive force – were such obvious consequences that the failure to implement appropriate training amounted to deliberate indifference of CITY to the rights of citizens similarly situated to Plaintiffs in the circumstances described herein.

**4th Amendment Rights of Hotel Guests & Coercive Tactics**

193.   The CITY, by and through its supervisory officials and employees, citizen complaints, civil litigation filings, and Internal Police Auditor communications and reports, has been given notice on repeated occasions prior to the events involving Plaintiffs on May 18, 2019, of a pattern of ongoing constitutional violations and practices by the individually-named Defendants herein and other police officers employed with SJPD, with regard to the use of coercion of citizens, including threats of arrest or seizure, or the taking of other actions the officers have no right to take and which are in fact violative of a citizen's rights, in order to accomplish an objective the officer(s) also have no right to achieve, and which is also violative of the citizens constitutional rights; commonly these dual threats come in the form of an ultimatum as occurred in this case with regard to "give me your IDs and you can stay," and, "I will give you your ID when you vacate the premises," as described herein above.

194.   These policies and practices of using unlawful threats and coercive tactics to obtain a citizen's identification – which officers have no right to demand, and/or the policies and practices of using unlawful threats and coercive tactics to "evict" hotel guests, has been and

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

continues to be implemented by Defendants as alleged hereinabove at the hands of THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI and KRAMER.

195.   Plaintiffs allege these coercive unconstitutional policies and practices are the moving force behind the violations of the Plaintiffs 5th Amendment rights of bearing witness against themselves, and their 4th Amendment rights against unreasonable entry/search and seizure, and their 14th Amendment rights of procedural and/or substantive due process before being deprived of a constitutional right(s) or having such right(s) violated, as described hereinabove.

196.   Plaintiffs further allege that the CITY has either no training whatsoever, or inadequate training, on the constitutional boundaries of the use of coercion and threats of constitutional violations of citizen's rights, and additionally, the boundaries of law enforcements intervention into purely civil matters arising in the context of the hotel guests/property owners having a dispute.

197.   The CITY has either provided no training at all in regard to appropriate handling, treatment, and protection of the rights of hotel guests, or has provided wholly inadequate training with no measurable standards, no measuring or discernment of the training recipients understanding, retention, and application – or non-application – of training materials and subject matter.

198.   Plaintiffs allege the non-existent or inadequate training aforesaid was the moving force behind the violations of the Plaintiffs' 5th Amendment rights of not bearing witness against themselves, and Plaintiffs' 4th Amendment rights against the unlawful and unreasonable entry/search of the Plaintiffs' hotel room, as described hereinabove.

199.   Also pertinent to the 14th Amendment violation alleged hereinabove, constituted by the use of the aforesaid coercive and unconstitutional practices, such as holding "hostage" the

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

Plaintiffs' state-issued IDs in order to force an ultimatum on Plaintiffs of giving up their IDs or leaving their lawfully possessed hotel room, Plaintiffs allege that CITY has failed to train officers on the due process violations pursuant to the 14th Amendment that arise when police officers engage in unlawful conduct, unsupported by law, in order to accomplish in coercive fashion the waiver or release of another of a citizen's rights under the U.S. Constitution.

200.   Plaintiffs allege there is non-existent or inadequate training on the foregoing issues and constitutional amendments, and their interplay by CITY, such that these deficiencies were the moving force behind the violations of the Plaintiffs' rights as alleged herein above.

**Supervisory & Policy Maker Knowledge, Acquiescence, Ratification.**

201.   Plaintiffs are informed and believe and thereon allege that high-ranking CITY officials, including high-ranking police supervisors knew and/or reasonably should have known about 1) the repeated acts of unconstitutional excessive force by SJPD officers, 2) the repeated violations of hotel guests' rights against unlawful entry, search, and seizure, and 3) the use of coercion and unlawful deprivation of property of suspects, and other similar tactics, to force the suspects acquiescence to giving up lawful rights as the "other" choice of an ultimatum.

202.   Despite said notice, Defendant CITY has demonstrated deliberate indifference to this pattern and practice of constitutional violations, and shown deliberate indifference to these constitutional violations, by failing to take necessary, appropriate, and/or adequate measures to prevent the continued perpetuation of such patterns of conduct by their employees and agents.

203.   This lack of an adequate supervisorial response by Defendant CITY demonstrates the existence of an informal custom, policy, or practice, which tolerates and promotes the continued violation of civil rights of civilians by CITY's employees and agents.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

204.   The acts of the individually-identified Defendants alleged herein are the direct and proximate result of the deliberate indifference of Defendant CITY and its supervisory officials and employees to violations of the constitutional rights of suspects by the individually-named Defendants and other police officers.

205.   With regard to each of the aforementioned categories of unlawful policy, practices, and training related deficiencies, the CITY has failed to adequately seek out or stop such constitutionally violative, coercive, and often sadistic behavior as alleged herein by failing to investigate claims of excessive force and police officer unlawful entry/search and coercive tactics, and further failing to adequately discipline, punish, or expel police officers who have engaged in the aforementioned and/or similar conduct when contacting suspects and other civilians.

206.   The Plaintiffs' rights violations and actual physical injuries were a foreseeable and a proximate result of the deliberate indifference of the CITY to the constitutional violations taking place in the SJPD, existing as a result of the patterns, practices, customs and/or policies, and/or lack of training or non-existent training, described above.

207.   As a proximate result of Defendants' conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

**SIXTH CLAIM FOR RELIEF**
**False Arrest**
**(Plaintiffs v. All Defendants)**

208.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

209.   Plaintiffs allege that Defendants THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI and KRAMER, in undertaking the warrantless and forced removal of Plaintiffs

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

from their hotel room and then the unlawful arrest of Plaintiffs did seize and falsely arrest Plaintiffs, causing their wrongful restraint, confinement, and intentional deprivation of freedom of movement by use of intimidation and use of force, which deprivation of freedom was for an appreciable period of time, and neither Plaintiff voluntarily consented to the deprivation of their freedom of movement.

210.   Plaintiffs allege that CITY is liable for the infringement of Plaintiffs' rights to be free from wrongful arrest, as the CITY is a public entity it is therefore liable for injuries proximately caused by the acts or omissions of its public employees undertaken within the scope of those workers' employment with said public entity.

211.   Plaintiffs were harmed and the conduct of THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI, and KRAMER, and each of them, was a substantial factor in causing Plaintiff's harm.

212.   As a proximate result of Defendant THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI, and KRAMER's conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

213.   The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

**SEVENTH CLAIM FOR RELIEF**
**Cal. Civ. Code 52.1 Bane Act – 4th and 14th Amend. Seizure Of Person/Property**
**(Plaintiffs v. Thompson, Zepeda, Schwitters, Pina, Oliveri, Kramer)**

214.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

215.  In doing the acts complained of herein regarding the taking and holding of the Plaintiffs personal state issued identification (driver's licenses) to extract compliance with unlawful directives to vacate their hotel room, Defendants THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI, and KRAMER acted under the color of the law to intentionally interfere with Plaintiff Paea and Marissa's basic human dignity and right to be free from the use of coercive, intimidating and unlawful threats to accomplish the violation of the Plaintiffs' Constitutional rights to remain in their rented dwelling, thus violating California's Tom Bane Act, Cal. Civ. Code § 52.1.

216.  Defendants acted under color of law in taking the Plaintiffs' state-issued ID's and holding them "hostage," to force the Plaintiffs to decide on the ultimatum given by THOMPSON, all occurring in the presence of all of the other SJPD officers present who made no effort to intercede and are liable as integral participants in the violations of the Plaintiffs rights, and/or liable for their failure to intercede in acts they knew were unlawful and in violation of the Plaintiffs' constitutional rights.

217.  As a proximate result of defendants' conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

218.  The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

**EIGHTH CLAIM FOR RELIEF**
**Cal. Civ. Code 52.1 Bane Act – 4ᵗʰ Amend. Unlawful Entry**
**(Plaintiffs v. Thompson, Zepeda & Pina)**

219.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

220.  In doing the acts complained of herein, Defendants THOMPSON, ZEPEDA and PINA acted under the color of law to intentionally interfere with Plaintiff Paea and Marissa's basic human dignity and right to be free from the use of coercive, intimidating and unlawful threats to accomplish the violation of the Plaintiffs' 4th Amendment rights against unlawful entry of their lawfully rented hotel room, thus violating California's Tom Bane Act, Cal. Civ. Code § 52.1.

221.  Defendants acted under color of law in unlawfully and threateningly forcing their way into the hotel room, all occurring in the presence of all of the other SJPD officers present who made no effort to intercede and are liable as integral participants in the violations of the Plaintiffs rights, and/or liable for their failure to intercede in acts they knew were unlawful and in violation of the Plaintiffs' constitutional rights.

222.  As a proximate result of defendants' conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

223.  The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.

**NINTH CLAIM FOR RELIEF**
**Cal. Civ. Code 52.1 Bane Act – 4th Amend. Excessive Force**
**(Plaintiffs v. Thompson, Zepeda, Schwitters, Pina, Oliveri, Kramer)**

224.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

225.  In doing the acts complained of herein, Defendants THOMPSON, ZEPEDA, SCHWITTERS, PINA, OLIVERI, and KRAMER acted under the color of the law to interfere with Plaintiffs Paea and Marissa's basic human dignity and right to be free from threats and

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

coercion used to commit excessive use of force proscribed by the 4th Amendment to the United States Constitution, thus violative of California's Tom Bane Act.

226.   Defendants acted under color of law in their use of threats and coercion in Plaintiffs' hotel room to subject them to excessive force described hereinabove, thereby violating the Plaintiffs' constitutionally protected rights.

227.   As a proximate result of defendants' threatening and coercive conduct, Plaintiffs suffered injuries and damages as set forth in paragraphs 159-160.

228.   The punitive damage allegations of paragraph 161 apply in this Claim for Relief to all individuals named as Defendants.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request and pray for judgment against Defendants, as to all claims for relief, as follows:

1. An award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs under state and federal law, in such amounts as may be separately determined for each such individual, inclusive of damages of any nature authorized pursuant to Civil Code section 52(a)&(b);

2. As against the individual defendants, punitive damages as allowed by state and federal law;

3. Attorney's fees pursuant to 42 U.S.C. §1988, C.C.P. 1021.5, and any other appropriate statute authorizing the award of attorney fees to Plaintiffs.

4. An award of all costs of suit incurred by Plaintiffs herein.

5. Such further relief as the Court deems just and proper.

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POWELL & ASSOCIATES**

Date: October 8, 2020                     /S/ Robert R. Powell
                                          ROBERT R. POWELL
                                          Attorney for Plaintiffs


JURY DEMAND:  Plaintiffs demand a trial by jury in this matter, pursuant to FRCP 38(a).


Dated: October 8, 2020                     /S/ Robert R. Powell
                                          ROBERT R. POWELL
                                          Attorney for Plaintiffs

First Amended Complaint for Violation of Civil Rights
Jury Trial Demanded
Santa Cruz v. City of San Jose
Case no.: 5:20-cv-00351-NC