UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISSA SANTA CRUZ, and others,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, and others,<br><br>Defendants. | Case No. 20-cv-00351-NC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF 47 |

In this civil rights case, Plaintiffs Marissa Santa Cruz and Paea I'suva Tukuafu charge that six San Jose Police Officers–Eugene Thompson, Saul Zepeda, Michael Pina, Joel Kramer, Joseph Oliveri, and Joshua Schwitters–used excessive force in responding to a noise complaint at a hotel. Officer body-worn video footage shows that a tense interaction in a hotel room doorway escalated into a use of force in which officers used a taser, baton, and 40mm projectiles to subdue and arrest Plaintiffs.

Plaintiffs move for partial summary judgment against all six officers. Specifically, Plaintiffs ask for judgment on their federal and California excessive force claims and Defendants' qualified immunity defense. Defendants oppose summary judgment contending their use of force was reasonable in response to the immediate threats to their safety and the safety of others. Having carefully considered the admissible evidence and the pleadings in this action, the Court finds that there are genuine disputes of material fact that preclude summary judgment.

## I. BACKGROUND

All parties agree that the Officers' video footage provides the best evidence of what transpired. But even with this lens, the events are susceptible to more than one interpretation. The relevant evidence is as follows. On May 18, 2019, Santa Cruz and Tukuafu were staying at a hotel. That evening, Officers Zepeda and Thompson arrived at their hotel room responding to a noise complaint. The Officers asked Plaintiffs for their identification and told them that they needed to leave the hotel. Plaintiffs went back in their room to gather their belongings. While Plaintiffs were packing, the two Officers were joined by Officers Schwitters, Oliveri, Kramer, and Sergeant Pina. The four Officers were equipped with "sidearms, batons, pepper spray, and tasers." After a few minutes, the Officers urged Plaintiffs to pack faster. The parties exchanged harsh words about the situation; Tukuafu swore at the officers. At this, Sergeant Pina told another officer to "push up and tase him." As they approached, Santa Cruz lunged at the Officers attempting to re-direct the taser away from Tukuafu. Officers Thompson and Zepeda tased Santa Cruz and she fell to the ground. In response, Tukuafu tried to throw his body over Santa Cruz to protect her. Officer Schwitters then shot Tukuafu in the stomach with a sponge round causing him to fall onto the floor. On the ground, Tukuafu continued to try to shield Santa Cruz as Officer Kramer struck him with a baton and Officer Oliveri tased him.

All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). ECF 8, ECF 11.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald

1  assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*,
2  477 F.3d 652, 658 (9th Cir. 2007).

3      The moving party bears the burden of identifying those portions of the pleadings,
4  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.
5  *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving
6  party must go beyond the pleadings, and, by its own affidavits or discovery, set forth
7  specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c);
8  *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.
9  Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however,
10 must be drawn in the light most favorable to the nonmoving party. *Tolan*, 572 U.S. at 651
11 (citing *Liberty Lobby*, 477 U.S. at 255).

### III. DISCUSSION

#### A. Excessive Force

    To determine whether force used was "reasonable" under the Fourth Amendment, a court must carefully balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This analysis requires "careful attention to the facts and circumstances of each particular case," including: (1) the "severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). In weighing these factors the "'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

    First, the Court must analyze the severity of the crime at issue. *See Graham*, 490 U.S. at 396. Plaintiffs claim that at the time of the incident neither plaintiff was committing a crime–they were packing up to leave following a noise complaint–and they were not charged with any crimes after their arrest, so this factor weighs in their favor. *See*

ECF 47 at 18.  In their opposition, Defendants countered that at the time of the incident, the officers were contemplating charging Plaintiffs with several crimes including resisting arrest, attempting to take a weapon from an officer, battery on an officer, and lynching, so the crimes the officers contemplated were severe.  *See* ECF 52 at 9.  Viewing the evidence in the light most favorable to Defendants, the non-moving party, there is still a genuine dispute as to whether the Plaintiffs committed any crimes and there is still a genuine dispute as to whether those potential crimes were "severe."

Second, the Court must investigate whether Plaintiffs posed an immediate threat to the safety of the officers or others.  *See Graham*, 490 U.S. at 396.  Plaintiffs argue that they were merely "impolite" and used "explicit language with the officers," but as "words are not weapons" Plaintiffs did not pose an immediate threat to the officers.  ECF 47 at 18-19.  Defendants counter that no officer used force until Santa Cruz "lunged at officer and reached for his taser" and later Tukuafu exited the room and "interfere[d] with the officers attempting to take Santa Cruz into custody."  ECF 52 at 9.  Viewing the evidence in the light most favorable to Defendants there remains a genuine dispute as to whether Plaintiffs posed an immediate threat to the officers.

Third, the Court must examine whether Plaintiffs were resisting arrest or attempting to flee at the time the officers used force.  *See Graham*, 490 U.S. at 396.  Plaintiffs claim that one of the officers ordered another to tase Tukuafu before either of Plaintiffs resisted or attempted to flee, therefore the force was unreasonable.  *See* ECF 47 at 19.  Defendants counter that the officers did not use any force until Santa Cruz "lunged" and Tukuafu "initiated physical interference" with the officers.  *See* ECF 52 at 8.  Viewing the evidence in the light most favorable to Defendants, there is still a genuine dispute as to whether Plaintiffs were resisting arrest or attempting to flee at the time of the incident.

The reasonableness evaluation is a balancing test that requires an in-depth, fact-specific analysis.  *See Graham*, 490 U.S. at 396.  However, the three primary considerations in the analysis are the severity of the crime, whether there was an immediate threat, and whether the plaintiffs were attempting to resist or flee.  Because the

4

Court finds that there is still a genuine dispute as to each of these factors, the Court does not need to examine the auxiliary supporting factors suggested by Plaintiffs. Accordingly, the Court finds that Plaintiffs are not entitled to summary judgment on their excessive force claim because there is still a genuine dispute as to the material facts of the severity of the crime, whether Plaintiffs posed an immediate threat to the officers, and whether Plaintiffs were attempting to resist arrest or flee at the time of the force.

### B.   Qualified Immunity

Whether an official is entitled to qualified immunity turns on whether their action was objectively reasonable, considering the "clearly established" legal rules at the time. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Plaintiffs cite to three cases to show that it is "clearly established" that the officers' use of force was excessive. *See* ECF 47 at 26-28. Defendants claim that these cases are distinguishable from the facts of this case. *See* ECF 52 at 21-22. Viewing the evidence in the light most favorable to Defendants, Plaintiffs have not established that the officers are not entitled to qualified immunity. Thus, the Court denies summary judgment on the qualified immunity claim.

### C.   Bane Act

The elements of a 42 U.S.C. § 1983 excessive force claim and a Bane Act claim are the same, apart from the additional "specific intent" requirement under the Bane Act. *See Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013). Accordingly, because the Court denied summary judgment as to the excessive force claims, the Court also denies summary judgment as to the Bane Act claim.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: May 11, 2021    _____
NATHANAEL M. COUSINS
United States Magistrate Judge